# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 23-1052V

| | |
|---|---|
| MARY DITZIAN,<br><br>　　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: March 31, 2025 |

*Jeffrey S. Pop, Jeffrey S. Pop & Associates, Beverly Hills, CA,* for Petitioner.

*Sarah Christina Duncan, U.S. Department of Justice, Washington, DC,* for Respondent.

### **FACT RULING ON ONSET**[1]

On July 10, 2023, Mary Ditzian ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a Table shoulder injury related to vaccine administration ("SIRVA") as a result of a tetanus-diphtheria-acellular pertussis ("Tdap") vaccine administered to her on February 4, 2022.[3] Pet. at 1, ECF No. 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find it more likely than not that the onset of Petitioner's shoulder pain occurred within 48 hours of vaccination, as alleged.

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] Petitioner alternatively alleges that her SIRVA was caused-in-fact by the subject vaccination. *See* Pet.

## I. Relevant Procedural History

Shortly after initiating her claim, Petitioner filed her vaccine administration record, medical records, and several witness declarations, followed by a statement of completion. ECF Nos. 6-8. Respondent thereafter determined that this matter was not appropriate for compensation. ECF No. 15. Respondent filed his Rule 4(c) Report in defense of this case on June 15, 2024. Respondent's Report, ECF No. 16.

Respondent contends that the medical records do not support the conclusion that the onset of Petitioner's pain occurred within 48 hours of vaccination. Respondent's Report at 5. Specifically, Petitioner did not attempt to seek care for shoulder-related pain until nearly seven months post vaccination – and then waited an additional month before seeking in-person treatment. *Id.* Additionally, Respondent argues the affidavits from Petitioner, her family members, and coworkers should be "given minimal weight" as they were all written for the purpose of litigation, more than a year post vaccination, and are otherwise not supported by the contemporaneous medical records. *Id.* The onset dispute is now ripe for consideration.

## II. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, 2005 WL 6117475, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's

failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014). The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### III.   Relevant Factual Evidence

I make this finding after a complete review of the record to include all medical records, declarations, and additional evidence filed, and in particular the following:[4]

- Petitioner received the subject vaccine on February 4, 2022, during a visit with her primary care provider ("PCP"). Ex. 2 at 1.

- Petitioner contends that "[w]hen [she] arrived home from the tetanus vaccination, [she] told [her] husband [] that [her] left shoulder was surprisingly sore." Ex. 1 ¶ 8. More so, "[w]ithin two days of the vaccination, [she] began to have throbbing pain in [her] left shoulder." *Id.* ¶ 9. Petitioner

---

[4] While I have reviewed all the evidence filed to-date in this case, only evidence related to onset will be discussed herein, though other facts may be provided as necessary.

- explained that her shoulder pain and range of motion ("ROM") continued to get worse "[a]s time passed[.]" *Id.* She stated that over-the-counter medications (Tylenol and Advil) provided no relief, with heating pads providing temporary relief. *Id.* Petitioner also noted that "[s]ometime in the summer of 2022, [her] daughter-in-law . . . noticed that something was wrong with [Petitioner's] left shoulder." *Id.* ¶ 11.

- Petitioner's daughter-in-law submitted a witness declaration on Petitioner's behalf, and in it states that during the summer of 2022, she was taking educational vaccination classes through her job as a pharmacy technician. Ex. 16 ¶ 5. She thus learned that a vaccination can be incorrectly administered, resulting in an inflammatory injury or atypical shoulder pain. *Id.* During her visit with Petitioner on August 20, 2022, she noticed something was wrong, and Petitioner said that "she had had left shoulder pain for months." *Id.* ¶ 6. According to the daughter-in-law, Petitioner was not sure what caused her pain, but "she said that she had gotten a Tdap shot right before her left shoulder pain started." *Id.* ¶ 7. The daughter-in-law told Petitioner to seek medical care. *Id.* ¶ 9.

- On August 26, 2022 – more than six months post-vaccination – Petitioner called her PCP's office requesting a referral to physical therapy ("PT") "to address shoulder pain." Ex. 3 at 69. Her PCP returned her call on August 29, 2022, instructing Petitioner to be seen in-person prior to receiving a referral to PT. *Id.* at 68.

- Almost a month later, on September 20, 2022, Petitioner saw her PCP complaining of "[l]eft shoulder pain for several months [with w]orsening symptoms." Ex. 3 at 74. Petitioner also reported "[d]ecreased [ROM] since receiving [the] Tdap [vaccination on] 2/4/22." *Id.* She stated she had been using over-the-counter Advil/Tylenol and a heating pad "with minimal improvement." *Id.* An examination showed decreased ROM and Petitioner was diagnosed with adhesive capsulitis. *Id.* at 74-75.

- The next day, Petitioner had an initial PT evaluation. Ex. 4 at 14. Petitioner's primary complaint was noted to be "[left] shoulder pain in the lateral arm that started after getting tetanus shot on 2/4/22." *Id.* She also stated she "had achiness from the shot and then the symptoms never improved." *Id.* Upon examination, Petitioner exhibited pain plus reduced ROM and strength, which her treater felt was consistent with adhesive capsulitis. *Id.* at 16.

4

- Petitioner underwent an MRI of the left shoulder on September 27, 2022. Ex. 5 at 18. The reason for the examination was listed as "shoulder pain for 7 months with very truncated [ROM] esp[ecially] in terms of rotation, adhesive capsulitis." *Id.*

- On October 7, 2022, Petitioner saw an orthopedic surgeon and reported that her left shoulder pain "began in 2/2022 after a tetanus shot." Ex. 6 at 9. She noted that her pain later progressed to stiffness in the shoulder. *Id.* Petitioner showed diminished ROM on examination. *Id.* at 10. The orthopedist assessed Petitioner with adhesive capsulitis, and she received a steroid injection the following week. *Id.* at 11-12. Petitioner thereafter attended 58 PT sessions, through April 20, 2023, approximately 14.5 months post vaccination. *See* Ex. 9 at 10-12; *see also* Ex. 7 at 7.

- One of Petitioner's coworkers has submitted a witness declaration on Petitioner's behalf, attesting that "[s]ometime before President's Day last year [2022], [the coworker] remember[ed] picking up something heavy and needing help." Ex. 12 ¶ 5. Typically, Petitioner would help the coworker, but "in that instance, [Petitioner] told her she could not help [] because her left shoulder was hurt." *Id.*

- Another one of Petitioner's coworkers submitted a witness declaration stating that "[a] couple of months after Christmas 2021, [Petitioner] started to ask [the coworker] for help lifting heavy items or carrying things [] at work." Ex. 13 ¶ 7. Further, "[s]ometime in February 2022 or March 2022," Petitioner required this coworker's help after dropping a hot pan "since her left shoulder was weak so she could not carry the pan." *Id.* ¶ 8.

- A third coworker of Petitioner's also submitted a witness declaration and appears to recall a similar event, stating that "[s]ometime in February 2022, [Petitioner] almost dropped food because she could not carry a food tray with her left arm." Ex. 14 ¶ 7. The coworker recalled this event because she had to reach for the handle on the steaming tray to help Petitioner. *Id.*

- Additionally, a fourth coworker attests that "[s]ometime after the New Year and most likely in February 2022, [Petitioner] expressed to [the coworker] that she needed help in fulfilling certain duties that required the use of her left arm." Ex. 15 ¶ 7. According to this coworker, Petitioner could not recall a specific trauma that led to this pain, "[a]lthough she recently said that she had had a tetanus shot." *Id.* ¶ 8.

5

- Finally, Petitioner's husband submitted a witness declaration, stating in it that "[w]hen [Petitioner] returned home after the vaccination, she told [him] something was wrong with her left shoulder." Ex. 17 ¶ 8. Petitioner's husband noted that "by the summer of 2022[,]" Petitioner continued "complaining of ongoing left shoulder pain." *Id.* ¶ 11.

- No other medical record or affidavit/witness declaration evidence regarding the onset of Petitioner's post vaccination shoulder injury has been filed.

## IV.   Finding of Fact Regarding Onset

A petitioner alleging a SIRVA claim must show that she experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)(XIV)(B) and 3(c)(10)(ii) (QAI criteria)).

As stated above, Respondent contends that Petitioner's medical records do not support that the onset of her pain occurred within 48 hours of vaccination. Respondent's Report at 5. But the totality of the evidence is favorable to Petitioner on this issue. The aforementioned medical records, coupled with Petitioner's filed witness declarations, establish that Petitioner consistently reported to treaters an onset close-in-time to vaccination, and that she indeed was experiencing symptoms in the relevant timeframe. *See,* e.g., Ex. 3 at 74; Ex. 4 at 14; Ex. 5 at 18-19; Ex. 6 at 9; Exs. 1, 12-17.

Although it does cast doubt on Petitioner's claim, the fact that Petitioner delayed seeking treatment for approximately six-and-a-half months (until August 26, 2022) does not by itself preclude a finding of Table onset. There is no requirement that a Program claimant prove Table onset with evidence that was generated *within* the severity timeframe, let alone within the two-day onset period. And similarly-lengthy delays have not always resulted in a finding that onset is not met. *See,* e.g., *Tenneson v. Sec'y of Health & Hum. Servs.*, No. 16-1664V, 2018 WL 3083140, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2018), *mot. for rev. denied,* 142 Fed. Cl. 329 (2019) (finding a 48-hour onset of shoulder pain despite a nearly six-month delay in seeking treatment); *Williams v. Sec'y of Health & Hum. Servs.*, No. 17-830V, 2019 WL 1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (noting a delay in seeking treatment for five-and-a-half months because a petitioner underestimated the severity of her shoulder injury).

The fact that Petitioner could not attend an in-person visit for an additional month after reaching out to her PCP likewise does not harm her Table onset claim. This is not a case where the petitioner had intervening medical visits without mentioning shoulder-related pain. There are no records supporting an alternative onset finding. And as I have

previously noted, SIRVA petitioners often put off seeking shoulder-related care based on the reasonable assumption that the pain is normal and will resolve on its own over time, especially since patients are often told by medical providers at the time of vaccination to expect some soreness and pain. This appears to have been the case here, with Petitioner explaining she thought her aching pain left over from the vaccination would resolve with home remedies. *See,* e.g., Ex. 1 ¶¶ 8-11.

In addition, although the filed medical record is limited in this case, the records that do exist nonetheless establish that Petitioner affirmatively and repeatedly linked her shoulder pain to the subject vaccine – beginning with the September 20th treatment encounter, at which time she reported "[l]eft shoulder pain for several months [with w]orsening symptoms" and, specifically, "[d]ecreased [ROM] since receiving [the] Tdap [vaccination on] 2/4/22." Ex. 3 at 74. This reporting provides support for Table onset. Other subsequent medical records describe onset with similar particularity. *See,* e.g., Ex. 4 at 14 (a September 21, 2022 complaint of "[left] shoulder pain in the lateral arm that started after getting tetanus shot on 2/4/22."); Ex. 6 at 9 (an October 7, 2022 report of left shoulder pain that "began in 2/2022 after a tetanus shot.").

Even with less specificity, the remaining entries in the medical records support an onset close-in-time to the subject vaccination. *See,* e.g., Ex. 5 at 18 (a September 27, 2022 reason for MRI listed as "shoulder pain for 7 months"). More so, such entries corroborate the ample and *consistent* contentions made in Petitioner's witness affidavits that Petitioner's pain began in February 2022 – thus supporting an onset soon after vaccination. *See* Exs. 12-17. This evidence – coupled with the many witness statements filed in the matter – preponderate in Petitioner's favor.

Of course – a delay of treatment that temporally matches the Act's severity timeframe, as here, is *strong evidence* that the claimant's pain was not sufficiently severe to compel her to seek treatment more rapidly. This fact *will* impact any pain and suffering award issued in this case – and Petitioner must therefore act accordingly in calculating damages to be requested.

## Conclusion and Scheduling Order

I encourage the parties to promptly attempt an informal resolution of this claim before expending any further litigative resources on the case. If at any time informal resolution (of either settlement or proffer) appears unlikely, given that the claim has been pending in SPU for over one year (having been assigned in November 2023), the parties should re-propose a method for moving forward, i.e., with a proposed briefing schedule or otherwise stating how they wish to proceed.

Accordingly, **by no later than Wednesday, April 30, 2025**, the parties shall file a joint status report confirming the date on which Petitioner conveyed, or intends to convey, a reasonable settlement demand and supporting documentation for Respondent's consideration. **If applicable, the status report may also state whether Respondent wishes to file an amended Rule 4(c) report and stating how much time is needed to submit said report.**

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master
